STATE of Missouri, Respondent,

v.

Edward H. PENNINGTON, Appellant.

No. 63456.

Supreme Court of Missouri,
Division 2.

Dec. 3, 1982.

Rehearing Denied Jan. 11, 1983.

Application for Transfer to Court
En Banc Denied Jan. 11, 1983.

Anne Hall, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Sandra Stratton, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Edward Pennington was convicted by a jury of robbery in the first degree, section 569.020 RSMo 1978; his punishment was fixed at life imprisonment. § 558.011.1(1) RSMo 1978. Sentence and judgment were rendered accordingly. Appellant charges the trial court erred in admitting into evidence items recovered from his automobile under an invalid search warrant and in failing to strike a venireman for cause. Affirmed.

The evidence shows that Pennington entered the North American Savings and Loan Association in Kansas City on January 30, 1981, wearing a trench coat and carrying a briefcase. He proceeded to Teller Jenkins' window where he displayed a handgun and demanded the money in her drawer and in the adjacent drawer of Teller Williams, seated nearby at a desk. After placing the cash, which included "bait money" in the briefcase, he ordered both women to the back of the bank and fled. A hidden camera, triggered by Teller Jenkins when she removed the "bait money" from the drawer, recorded the proceedings.

Four days later police officers in Salina, Utah, stopped a green Buick for speeding. Pennington was driving, his wife and two children were with him. The back seat of the car was filled with personal belongings. Because Pennington expressed concern for a sick baby, the officers first escorted the car to a nearby clinic. While doing so they ran a check on Pennington's driver's license. The officers received information that Pennington was wanted in connection with the Kansas City armed robbery. Upon arriving at the clinic and finding it closed for the lunch hour, Pennington was advised to follow the officers to the City building.

Upon arrival at the office of the Chief of Police, Pennington was informed of the Kansas City warrant and placed under arrest. The Police Chief then called the Kansas City police and received a description of the suspect, serial numbers of the bait money taken during the robbery, and a request for a search for a number of other items associated with the robbery, including a small automatic pistol and a trench coat. The Chief then applied for a search warrant, using this information in the supporting affidavit.

The green Buick had been impounded by police pending a determination of ownership. The car was searched pursuant to the search warrant, and an inventory was made according to department policy at the same time. The search revealed money hidden in the toes of shoes in a knapsack, a knee-high trench coat, briefcase and a .357 magnum. A .25 automatic and some drug paraphernalia had been discovered earlier in a routine search of a shaving kit which the police supposed contained personal items Pennington would need for his stay in jail.

Prior to trial, defendant moved to suppress the search warrant; that motion was overruled. At trial the defendant was identified by both bank tellers as the robber. Photographs of defendant taken during the robbery by the security camera and serial numbers of the bait money taken in the robbery were entered into evidence. The serial numbers corresponded to serial numbers on some of the $6,200.00 found in defendant's car.

I

Appellant charges the trial court erred in admitting into evidence items recovered from his automobile, the briefcase, the knapsack in which the money was hidden, the trench coat and the .25 automatic gun, because the search warrant was based on a defective affidavit.[1] He argues the affidavit did not provide enough of the underlying circumstances of the robbery to determine if there was probable cause to search the automobile; the affidavit and search warrant did not describe the items with sufficient particularity; and the affidavit did not establish that the items were likely to be stored in the auto or that the car was involved in the robbery.

---

1. The .25 automatic had actually been discovered earlier, at the time of the arrest. A .357 magnum was the weapon uncovered during the search.

Probable cause is to be determined from the complaint and, if filed, the supporting affidavits. *State v. Wing,* 455 S.W.2d 457 (Mo.1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971). The magistrate judge on application for a search warrant is entitled to a common sense reading of the entire supporting affidavit. *Id.* The Utah affidavit contained statements of fact sufficient to find probable cause for issuing this search warrant: an identification of the suspect, the existence of a warrant for his arrest for armed robbery, the location of a robbery, a description of the car he was driving, a request to search for specific items related to the robbery case and the identity of the Kansas City police officer supplying the information.

Recognizing that only the probability, and not a prima facie showing of criminal activity, is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are governed by less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); and that the determination of probable cause should be accorded deference by reviewing courts, *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); it cannot be said that the affidavit was fatally defective with respect to probable cause.

As for complaints that the items to be seized were not described with sufficient particularity, this Court has held:

The requirement of the constitutional provisions that search warrants shall particularly describe the thing to be seized necessitates a description of the property to be seized with such certainty as to identify it and prevents the seizure of one thing under a warrant describing another. The description must be so particular that the officer charged with the execution of the warrant will be left with no discretion respecting the property to be taken.

A description of the property to be seized need not be technically accurate nor necessarily precise. . . .

*In re 1969 Plymouth Roadrunner, Black 2-Door,* 455 S.W.2d 466, 470 (Mo.1970).

The descriptions of the "tan knee-high trench coat," "briefcase," and "money in the amount of $6,000.00" were sufficient to prevent a general search and "to ensure that the property taken was not left to the caprice of the police conducting the search." *State v. Flauaus,* 515 S.W.2d 873, 877 (Mo. App.1974). The term "weapon," however, would seem to be too imprecise to be adequate. *In Re 1969 Plymouth Roadrunner, Black 2-Door,* 455 S.W.2d at 470.

The complaint that the affidavit did not adequately link the green Buick with the robbery is a variation on his charge that no probable cause to search this auto was established in the affidavit. In judging probable cause issuing magistrates are not to be confined by limitations or by restrictions on the use of their common sense. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). The affidavit did specifically describe the vehicle and link it with defendant, for whom an arrest warrant had been issued in connection with the robbery; it did not link the vehicle to be searched with the Kansas City robbery or indicate the short time span that had elapsed since the robbery.

Whatever error might be read into any of these shortcomings, the effect on defendant's rights cannot be deemed prejudicial when considered with the independent evidence of defendant's guilt, particularly the two eyewitness identifications of defendant by the bank tellers and photographs taken by the hidden camera of defendant committing the robbery.

## II

Appellant charges error to the failure of the court to strike for cause Venireman Culp.

During voir dire defense counsel asked Mr. Culp if he would think defendant was guilty if he did not take the stand to testify.

Mr. Culp, along with several others, indicated that such a situation might affect his ability to be fair. At the suggestion of the prosecuting attorney, defense counsel rephrased his question to ask if anyone could not put aside such a feeling and follow the court's instruction that no presumption of guilt should be drawn from an accused's failure to testify. Some veniremen indicated they could not put aside their feelings in the matter and were removed for cause. Mr. Culp did not so indicate and he was not removed for cause. Defense counsel used a peremptory strike to remove him.

 The purpose of the voir dire examination is to determine whether each individual would be fair and impartial if chosen as a juror. *State v. Harris,* 425 S.W.2d 148, 155 (Mo.1968). A trial court is accorded wide discretion in ruling on challenge for cause and will not be overturned absent an abuse of that discretion. *State v. Royal,* 610 S.W.2d 946, 950 (Mo. banc 1981); *State v. Treadway,* 558 S.W.2d 646 (Mo. banc 1977), *cert. denied,* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 124 (1978). Although Venireman Culp did indicate initial reservations about a defendant's failure to testify, he did not indicate he would be unable to put those feelings aside in order to follow the court's instruction. The veniremen who did so indicate were removed. These are not the circumstances of an abuse of discretion of the court's role in voir dire.

The judgment of the trial court is affirmed.

WELLIVER, P.J., and SEILER, J., concur.