2006 UT App 404

**STATE of Utah, Plaintiff and Appellee,**

v.

**William E. GALLEGOS, Defendant and Appellant.**

No. 20050448–CA.

Court of Appeals of Utah.

Oct. 5, 2006.

474

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and DAVIS.

## OPINION

BENCH, Presiding Judge:

¶ 1 Defendant William E. Gallegos appeals his convictions for attempted murder and domestic violence assault in violation of Utah Code sections 76–5–203 and 77–36–1. *See* Utah Code Ann. §§ 76–5–203, 77–36–1 (Supp. 2006).

## BACKGROUND [1]

¶ 2 Defendant and the victim, Amber Marchant, had an ongoing abusive relationship.

---

1. On appeal we review "the facts in the record in the light most favorable to the verdict." *State v.*

On prior occasions, Marchant would report Defendant's abuse to the police, but then renounce her statements after she reconciled with Defendant. A few days before the abuse in this case, Marchant moved back in with Defendant. On October 19, 2004, Marchant returned home in the early morning, waking Defendant. They argued, and Defendant proceeded to hit Marchant twice in the leg with a cane and to stab her in the leg with a jagged-edged knife. When Marchant could not get her leg to stop bleeding, Defendant's anger increased. He duct-taped Marchant's stab wound and then continued to hit her on the head, arms, and back with the cane. Marchant testified that the cane eventually broke into three pieces. Defendant then stabbed Marchant in her neck with a small, sharp, silver knife, and in her temple with a wooden butter knife. While stabbing Marchant, Defendant stated, "I ought to kill you."

¶ 3 After the attack, Defendant duct-taped Marchant's mouth and told her to shower. While Defendant was eating, Marchant ran across the street to a gas station where some police officers had gathered. After Defendant was arrested, the booking clerk told him that he was being charged with attempted homicide. Defendant responded, "[a]ttempted homicide. I should have just killed her. I had her right there."

¶ 4 The trial court found Defendant indigent and appointed a public defender, Martin Gravis, to represent him. Defendant sent the court a letter complaining about Gravis's representation. On December 1, 2004, at Defendant's preliminary hearing, Defendant requested a continuance in order to fire Gravis and hire private counsel. The court granted the continuance but instructed Gravis to remain as counsel until substitute counsel entered an appearance. When the preliminary hearing resumed on December 29, Gravis was still representing Defendant.

¶ 5 In January 2005, Defendant sent letters to the court complaining about the following: his inability to convince the county attorney to charge Marchant with assault, his frustration with Gravis's representation, and Gravis's refusal to help Defendant press charges against Marchant. Defendant also requested that he be allowed to keep all legal materials, that Gravis visit the jail and assist him in a timely manner, and that Gravis provide Defendant with all necessary legal books. In the alternative, if his requests could not be granted, Defendant wanted another attorney. A few weeks later, Defendant sent another letter requesting new counsel, alleging that Gravis had refused to provide him with the necessary case law.

¶ 6 In February, at the pretrial conference, Defendant asked the court to release Gravis and to allow Defendant to represent himself. The trial court conducted an extensive colloquy regarding Defendant's constitutional right to counsel. The trial court advised Defendant against self-representation and explained the potential consequences. Defendant, however, insisted that he did not want Gravis to represent him or even to assist as standby counsel. He subsequently waived his right to an attorney. Defendant concedes that the trial court's colloquy regarding his waiver of counsel was adequate. Further, Defendant does not challenge the trial court's refusal to appoint substitute counsel. Defendant also subsequently waived his right to a jury trial.

¶ 7 In March, at a court conference on the day before trial, the court noted that Defendant had sent various letters requesting legal assistance. When the court questioned Defendant about the requests, he responded, "I don't want an attorney[.] I'll be my attorney." The court again warned Defendant about the risks of self-representation.

¶ 8 The next day, at the beginning of the trial, the State voiced its concern about Defendant's inconsistent positions on representation. The court again questioned Defendant and reminded him of his right to counsel. Defendant refused representation and confirmed his waiver of counsel.

¶ 9 On the second day of trial, during the testimony of the State's seventh and final witness, Defendant requested reappointment of counsel. The court denied the request, concluding that Defendant's midtrial request

*Layman,* 1999 UT 79, ¶ 3, 985 P.2d 911.

was too late because they were halfway through trial. Defendant then called five witnesses to testify on his behalf. Defendant presented evidence to support his self-defense claim as well as his claims that Marchant cuts herself. Upon hearing all the evidence, the trial court convicted Defendant for both attempted murder and domestic violence assault. Defendant now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Defendant asserts that the trial court denied him his Sixth Amendment right to a fair trial when it denied his midtrial request for reappointment of counsel. A trial court's denial of a motion to reappoint counsel, where the motion follows a proper waiver of the right to counsel, will be overturned only for an abuse of discretion. *See Commonwealth v. Jackson*, 376 Mass. 790, 383 N.E.2d 835, 839 (1978).

¶ 11 Defendant also contends that the trial court abused its discretion in denying his motion for a continuance. *See State v. Cabututan*, 861 P.2d 408, 413 (Utah 1993) ("The standard of review for the denial of a motion for continuance is abuse of discretion[.]").

## ANALYSIS

### I. Right to Counsel

¶ 12 Defendant asserts that the trial court denied him his Sixth Amendment right to a fair trial when it refused to grant his midtrial request for reappointment of counsel. We disagree.

### A. Proper Standard of Review

¶ 13 "The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel." *State v. Heaton*, 958 P.2d 911, 917 (Utah 1998). However, "the Sixth Amendment also guarantees an accused the right to self-representation, 'provided only that he [or she] knowingly and intelligently forgoes his [or her] right to counsel.'" *Id.* (alterations in original) (citation omitted).

¶ 14 Here, Defendant concedes that the trial court properly conducted a review of Defendant's right to counsel "at the beginning of the trial, as well as at the pretrial hearing." Accordingly, Defendant does not challenge the trial court's conclusion that he voluntarily, knowingly, and intelligently waived his right to counsel. Rather, Defendant claims that the trial court erred by not allowing him to revoke his waiver midtrial and by not reappointing an attorney to represent him.

¶ 15 Although we have found no Utah case law addressing the standard of review for the denial of a midtrial request to reappoint counsel, "[s]everal states have determined that it is within the trial court's discretion to appoint counsel after a defendant begins the trial pro se." *Koehler v. State*, 499 N.E.2d 196, 199 (Ind.1986); *see also People v. Smith*, 109 Cal.App.3d 476, 167 Cal.Rptr. 303, 306 (1980) (determining whether the trial court abused its discretion in refusing to revoke a waiver of a pro se defendant); *People v. Price*, 903 P.2d 1190, 1193 (Colo.Ct.App.1995) ("A trial court is not compelled to grant a criminal defendant's request to withdraw a valid waiver of the right to counsel, but must exercise its discretion in evaluating the circumstances surrounding the request."); *Commonwealth v. Jackson*, 376 Mass. 790, 383 N.E.2d 835, 839 (1978) (stating that although the court recognizes "the importance of counsel," it "rejects any suggestion that every defendant has an absolute right at the moment trial is to begin to retract his decision to represent himself"; rather, it is "within the broad discretionary power of [the] court"); *State v. Vincent*, 137 N.M. 462, 112 P.3d 1119, 1133 (App.2005) ("[O]nce a defendant has validly waived his right to counsel, he may not later demand the assistance of counsel as a matter of right."); *State v. Harmon*, 575 N.W.2d 635, 645 (N.D.1997) ("Several courts have held it is discretionary for a trial court to allow an accused to revoke a waiver of the right to counsel during trial."); 3 JOSEPH G. COOK, CONSTITUTIONAL RIGHTS OF THE ACCUSED § 9:1 (3d ed. 1996) ("[A]n accused who elects to proceed pro se need not be permitted to change her mind during trial.").[2]

2. In *People v. Price*, 903 P.2d 1190 (Colo.Ct.App. 1995), Colorado recognized "the existence of au-

¶ 16 We conclude that "[a]fter a competent defendant has made a valid waiver, reappointment [midtrial] is a matter for the discretion of the trial court." *State v. Canedo–Astorga*, 79 Wash.App. 518, 903 P.2d 500, 504 (1995). Therefore, "once an unequivocal waiver of counsel has been made, the defendant may not demand the assistance of counsel [midtrial] as a matter of right since reappointment is wholly within the discretion of the trial court." *Id.* (quotations and citation omitted)

### B. Abuse of Discretion Determination

¶ 17 "In exercising discretion, a trial court should consider all the facts and circumstances of the case." *Id.*

"Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and stage of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney."

*Koehler*, 499 N.E.2d at 199 (quoting *People v. Elliott*, 70 Cal.App.3d 984, 139 Cal.Rptr. 205, 211 (1977)). "While the consideration of all of these criteria is obviously relevant and helpful to a trial court in resolving the issue,

there are no absolutes." *Smith*, 167 Cal. Rptr. at 306. "[I]n the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial." *Id.* Reasons for denying a request for reappointment include when "the request comes on the eve of or during trial, and will delay or interrupt the trial if granted." *Canedo–Astorga*, 903 P.2d at 504.

¶ 18 In this case, Defendant acknowledges that he waived his right to counsel on two separate occasions prior to trial. At the start of trial, the court again urged Defendant to utilize counsel, but Defendant confirmed his waiver. The court recommended that Gravis serve as standby counsel, but Defendant refused. Defendant motioned for reappointment only after the State had called and examined all seven of its witnesses, and Defendant had cross-examined six of those witnesses. If the trial court had granted Defendant's request, the newly appointed attorney would have had to either proceed without knowledge of the already presented evidence or the court would have had to delay trial so the attorney could review transcripts of the State's case. Given the tardiness of Defendant's request and the trial court's previous warnings about self-representation, we conclude that the court did not abuse its discretion in denying Defendant's midtrial request for reappointment of counsel.[3]

thority from other jurisdictions that support the proposition" that a defendant can withdraw his waiver of counsel at any time. *Id.* at 1193 (citing *State v. Rickman*, 148 Ariz. 499, 715 P.2d 752 (1986) and *Funderburg v. State*, 717 S.W.2d 637 (Tex.Crim.App.1986)). The *Price* court determined, however, that "the conclusions in these cases result from interpretation of state statutes or rules that confer upon criminal defendants a right to revoke a valid waiver of counsel." *Id.* As in Colorado, no such "statute or rule exists in the State of [Utah]," and therefore the contrary cases are not analogous. *Id.*

3. Defendant argues that it is clear from the record that he could not present an adequate defense, and thus, the trial court erred in not reappointing counsel. We disagree. Defendant presented five witnesses to support his self-defense claim. The witnesses testified to the following: that Marchant had stated she wanted to

die on previous occasions, that she had threatened to kill various individuals, that she had previously hit Defendant, and that she told a friend on a prior occasion she had stabbed herself while cooking dinner. Therefore, the record does not clearly support Defendant's assertion that he could not adequately present his defense.

Further, a defendant's ability to represent himself, although a factor, is not dispositive in a determination of reappointment of counsel.

The discretion of the trial court is not destroyed by a defendant's ineptitude, even when the ineptitude has been convincingly demonstrated. Just as ineptitude does not in itself justify the denial of a defendant's Sixth Amendment right to represent himself, ineptitude does not by itself mandate the restoration of a defendant's Sixth Amendment right to counsel.

*State v. Canedo–Astorga*, 79 Wash.App. 518, 903 P.2d 500, 504–05 (1995) (quotations and citation

## II. Motion for Continuance

¶ 19 Defendant next asserts that the trial court abused its discretion when it denied his motion for a continuance. On appeal, he asserts that the State presented surprise expert testimony and that the trial court should have granted him time to prepare a defense. After reviewing the record, we conclude that Defendant never requested a continuance to prepare for the alleged surprise testimony. When the court denied Defendant's request for reappointment of counsel, Defendant merely stated, "I don't have to do it today. Could we do it for Monday or whenever we come back? I'm asking for co-counsel." Defendant's motion was for reappointment of counsel, not to prepare for surprise evidence. Because Defendant did not preserve this issue below, and does not argue plain error or exceptional circumstances on review, his argument fails on appeal. *See State v. Gonzales*, 2005 UT 72, ¶ 61, 125 P.3d 878.

■ ¶ 20 Furthermore, even if Defendant had properly preserved this issue, any error in denying Defendant's request was harmless. During an investigation of the crime scene, Detective Perkins seized five cane pieces, which were later admitted into evidence. On the second day of trial, during the lunch recess, Perkins observed and concluded that the five cane pieces came from two different canes. After the recess, the State called Perkins to testify about his conclusions. His testimony arguably added credibility to Marchant's testimony that the cane broke into three pieces rather than five, as found at the crime scene.

¶ 21 Defendant asserts that Perkins's testimony constitutes surprise expert testimony, and therefore, the trial court erred by denying Defendant a continuance to prepare. However, Defendant does not demonstrate "a reasonable likelihood that the [alleged] error affected the outcome of the proceedings." *State v. Wetzel*, 868 P.2d 64, 69 (Utah 1993) (quotations and citation omitted). "A review of the record indicates that there was ample evidence to convict [D]efendant even

without [Perkins's] testimony." *Id.* Because the alleged error was harmless, reversal is not warranted. *See id.*

### CONCLUSION

¶ 22 The trial court did not abuse its discretion in denying Defendant's midtrial request for reappointment of counsel. Further, Defendant did not properly preserve his contention that the trial court erred in denying his motion for a continuance. In any event, the "surprise testimony" did not prejudice Defendant's case and, thus, was harmless.

¶ 23 Accordingly, we affirm.

¶ 24 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

---

omitted). A defendant assumes the risk of ineptitude when he knowingly, voluntarily, and intelligently waives his right to counsel. *See id.* at 505. The fact that the risk comes to pass later during

trial, just as the trial court stated it would, does not require the court to reappoint counsel. *See id.*